UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RHONGELYN MOORE, an individual, :
6301 Barrow House Drive :
Brandywine, MD  20613 :
                                                            :
   Plaintiff, :
                                                            :
v. :  Civil Action No._____
                                                            :
PENNY S. PRITZKER, SECRETARY :  **JURY TRIAL DEMAND**
UNITED STATES DEPARTMENT :
  OF COMMERCE :
1401 Constitution Avenue, N.W. :
Washington, D.C.  20230 :
                                                            :
   Defendant. :
_____

## COMPLAINT
(Retaliation in Federal Employment)

Plaintiff Rhongelyn Moore, a natural person, brings this action against Defendant Penny S. Pritzker, Secretary, Department of Commerce, and alleges as follows:

### NATURE OF THE ACTION

1. This is an action based on Defendant's retaliation against Plaintiff for engaging in prior protected equal employment opportunity (EEO) activities.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action is based on a federal statute, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

3. Pursuant to 42 U.S.C. § 2000e-5(f)(3), each United States district court shall have jurisdiction over actions brought under this subchapter. Moreover, personal jurisdiction is proper because the Department of Commerce maintains offices in Washington, D.C., where Plaintiff is employed and where the challenged acts of discriminatory retaliation occurred.

4. This action was timely commenced, pursuant to 42 U.S.C. § 2000e-16(c), within ninety (90) days following Plaintiff's receipt of the May 6, 2015 final order of the Department of Commerce (*see* a true and correct copy of the order at Exhibit A attached hereto) implementing the April 30, 2015 decision of the Equal Employment Opportunity Commission (EEOC) (*see* a true and correct copy of the decision at Exhibit B attached hereto) that granted the Department of Commerce's Motion for Summary Judgment.

## THE PARTIES

5. Upon information and belief, Defendant Penny S. Pritzker was Secretary of the Department of Commerce at all times relevant to this action.

6. Plaintiff Rhongelyn Moore (hereinafter referred to as "Plaintiff") resides at 6301 Barrow House Drive, Brandywine, MD 20613.

7. Plaintiff, at all times relevant to this action, has been an employee of the Department of Commerce.

## THE FACTS

8. The Department of Commerce (hereinafter referred to as "Agency" or the Agency") is an agency of the Government of the United States and is located at 1401 Constitution Avenue, N.W., Washington, D.C. 20230.

9. Plaintiff, a black female, began her employment with the federal government in 1987 and has been employed with the Agency continuously since 1990.

10. In December 2001, Plaintiff was promoted to a GS-13 Public Affairs Specialist position in the Office of Public Affairs (OPA).

11. Shannon Gilson, a white female, was Deputy Director of OPA and was Plaintiff's first-level supervisor until her departure from the Agency in August 2011.

12. Kevin Griffis, a white male, was the Director of OPA and was Plaintiff's second-level supervisor until he left that position in or about January 2012 at the end of his political appointment.

13. Jennifer Friedman, a white female, assumed Mr. Griffis' position as Director of OPA in January 2012 and remained in that position through September 25, 2012.

14. The Agency's fiscal year (FY) for performance evaluations begins on October 1 and ends on September 30.

15. Plaintiff's performance evaluation for FY2011 began on October 1, 2010, and ended on September 30, 2011.

16. Jennifer Friedman was not in Plaintiff's chain of command during the FY2011 performance evaluation period.

17. According to a Standard Form (SF) 50 issued by the Agency, Parita Shah, an Asian female was promoted to the position of Deputy Director, OPA, on August 29, 2011, following Ms. Gilson's departure.

18. Ms. Shah was on detail to the State Department for a period of two months (August to September 2011) and returned to the Agency in October 2011, after the end of the FY2011 rating period.

19. On or about February 28, 2011, Plaintiff filed, pro se, a formal age discrimination complaint against Kevin Griffis, and, on or about August 13, 2012, the Agency adopted by final order an EEOC entry of summary judgment in the Agency's favor.

20. In May 2011, Plaintiff requested a promotion to the GS-14 level of the Public Affairs Specialist position, but Mr. Griffis denied her request.

21. On or about June 16, 2011, Plaintiff filed a pro se retaliation complaint against both Kevin Griffis and Shannon Gilson based on the denial of her request for the GS-14 promotion, and on or about March 6, 2014, the Agency adopted by final order EEOC's entry of summary judgment in the Agency's favor.

22. Following the filing of her discrimination complaints, Plaintiff began to experience ongoing adverse treatment or employment actions by Mr. Griffis.

*Mr. Griffis' Refusal to Provide Plaintiff With a Copy of Her FY2011 Interim Rating*

23. The Agency's own guidelines provide for an interim rating when a supervisor leaves her position and an employee has been under a performance plan for 120 days.

24. In late August 2011, prior to leaving her position with the Agency, Ms. Gilson conducted a telephonic interim interview with Plaintiff.

25. Plaintiff was not aware that the August 2011 interim rating existed in written form until January 5, 2012, when she contacted Bill Fleming, Director of the Agency's

4

Office of Human Resources Management (OHRM) to inquire about the propriety of Mr. Griffis conducting FY2011 evaluations well after that fiscal year had ended.

26. Mr. Fleming responded by email that he had been informed that Plaintiff had received an interim rating in August 2011, that OHRM did not have a copy of it, and that she would need to request a copy from Mr. Griffis.

27. On January 6, 2012, Plaintiff forwarded Mr. Fleming's email to Mr. Griffis, requesting a copy of the August 2011 interim rating.

28. Mr. Griffis refused to respond to Plaintiff's repeated requests for a copy of the interim rating even though he had received it in an August 24, 2011 email from Ms. Gilson and had several follow-up email discussions with Ms. Gilson regarding the interim rating.

29. Mr. Griffis' refusal to provide Plaintiff with a copy of the interim rating denied her the opportunity to review the rating, seek clarification on any commentaries in the rating, correct any inaccuracies in the rating, improve her performance based on any specific suggestions in the rating, and increase her chances of promotion to the GS-14 level of the Public Affairs Specialist position.

***Mr. Griffis' Refusal to Accept Plaintiff's FY2011 Performance Accomplishments***

30. On December 5, 2011, Mr. Griffis then proceeded, via email, to request FY2011 accomplishments from all staff members by noon that day.

31. Mr. Griffis did not include Plaintiff in that email.

32. In late December 2011, Complainant learned of the email request for staff accomplishments and requested a copy of the email for verification.

5

33. On or about January 9, 2012, after receiving a copy of the email requesting accomplishments, but prior to Mr. Griffis' completion of her FY2011 evaluation, Plaintiff drew Mr. Griffis' attention to her exclusion from the email list.

34. Mr. Griffis did not explain how Plaintiff was omitted from the email list of recipients, apologize for the omission, or permit her to file her accomplishments late.

35. The Agency's email system allows a sender to select an entire office staff as recipients of an email.

36. Mr. Griffis had been with the Agency since about March 2009 and was well familiar with the "whole staff" email selection, which he had used on numerous prior occasions.

37. Nevertheless, Mr. Griffis managed to send the email request for work accomplishments to every staff member except Plaintiff.

38. Mr. Griffis' refusal to allow Plaintiff to update her accomplishments was a deliberate action calculated to deny her the opportunity to submit information in her favor and to support a lower performance rating than she deserved for FY2011.

39. Mr. Griffis' refusal to allow Plaintiff to update her accomplishments was also calculated to prevent her, the only GS-13 Public Affairs Specialist in the OPA who has not been promoted to the GS-14 level, from obtaining promotion to that level.

40. Plaintiff had previously submitted a partial list of her accomplishments to Ms. Gilson and would most certainly have submitted a more complete and comprehensive list at the end of the performance rating period if she had been given an opportunity to do so.

*Parita Shah's Ineligibility to Rate Plaintiff's FY2011 Performance*

41. After Ms. Gilson left her position in late August 2011, the Agency claims to have assigned Parita Shah, a former co-worker of Plaintiff, as her first-level supervisor effective August 20, 2011.

42. However, Ms. Shah was on detail to the State Department from August to September 2011 and did not return to the Agency until October 2011, after the end of the FY2011 rating period.

43. At no time during the FY2011 rating period did Ms. Shah supervise Plaintiff-- directly or otherwise--and Plaintiff was not informed at any time during the FY2011 rating period that Ms. Shah was her first-level supervisor.

44. Ms. Shah was Plaintiff's rating official in name only and had no personal knowledge regarding Plaintiff's performance during FY2011.

45 Likewise, Ms. Friedman, who occupied the Director of OPA position from January 2012 to September 25, 2012, was not Plaintiff's second-level supervisor during the FY2011 performance evaluation period.

46. Therefore, Mr. Griffis was the only agency official who was actually involved in Plaintiff's final performance rating for FY2011.

*Mr. Griffis' Delay in Timely Completing Plaintiff's FY2011 Performance Evaluation*

47. Mr. Griffis left Plaintiff's evaluation for the very last to complete, issuing it in February 2012, after he had completed evaluations for all other members of his staff. While there is indication that Mr. Griffis completed all FY2011 performance evaluations

late, he chose Plaintiff's evaluation to be the very last, forcing her to bear the brunt of his delay.

### *Mr. Griffis' FY2011 Performance Evaluation of Plaintiff*

48. The performance standards for Plaintiff's GS-13 Public Affairs Specialist position contain three critical elements, namely: Customer Service; Media Outreach and Support; and Special Projects.

49. Under the Agency's performance evaluation system, each element of Plaintiff's performance standards, as well as her overall rating, is based on a rating level of "1" to "5," with "5" being the highest rating.

50. In the FY2011 interim performance rating, Ms. Gilson rated Plaintiff a level "4" on the job element of Customer Service, a "3/4" on Media Outreach and Support, and a "3/4" on Special Projects.

51. The interim rating noted specific areas for improvement in each element and provided suggestions on how Plaintiff could increase her performance ratings.

52. However, Plaintiff was unaware of any need for improvement because Mr. Griffis, who received the interim rating by email on August 24, 2011, did not discuss them with Plaintiff or provide her with a timely copy of the rating, thereby depriving her of the opportunity to improve her performance and to increase her chances of promotion to the GS-14 grade level of her position.

53. Ms. Shah and Mr. Griffis down-rated Complainant from Ms. Gilson's interim ratings to final ratings of "3" on Customer Service and "3" on Media Outreach and Support even though Ms. Shah did not supervise Plaintiff during the rating period.

54. For performance year FY2011, Mr. Griffis accorded Plaintiff an overall rating of "3" out of "5."

55. Plaintiff, a GS-13 Public Affairs Specialist, received a lower performance rating even though, as a GS-13, she did similar work and performed as well as GS-14 Public Affairs Specialists in the Office of Public Affairs.

56. After Mr. Griffis left the Agency, Plaintiff's overall performance rating for FY2012 rose to level "4."

**Mr. Griffis' Recommendation of a $150.00 Performance Bonus for Plaintiff**

57. Mr. Griffis recommended only a $150.00 performance bonus for Plaintiff for her FY2011 performance.

58. Prior to the end of FY2011, and well before he requested staff accomplishments in December 2011, Mr. Griffis had predetermined that he would award Plaintiff the $150.00 bonus.

59. This bonus was drastically lower than the $1,000.00 award for which Mr. Griffis had previously recommended Plaintiff, prior to the earlier filings of her discrimination and retaliation complaints.

60. Nevertheless, Mr. Griffis recommended significantly higher bonuses for GS-14 Public Affairs Specialist employees that ranged from $1000.00 to $1,500.00 for level "4" performance.

61. The $150.00 performance bonus that Mr. Griffis recommended for Plaintiff, a GS-13 Public Affairs Specialist, based on a rating that was a single level lower, level "3," was grossly disproportionate in amount and was insulting and humiliating to Plaintiff.

*Mr. Griffis' Attempt to Undermine Plaintiff After He Left His Position*

62. In or around January 2012, Mr. Griffis left his position as Director of OPA but was still employed by the Agency.

63. In or around January 2012, Jennifer Friedman assumed the position of Director of OPA and became Plaintiff's second-level supervisor.

64. In a meeting with Mr. Griffis and Ms. Friedman regarding Plaintiff's FY2011 performance evaluation, Plaintiff declined to sign the evaluation on the bases that it did not reflect her true accomplishments and that it purported to show that she was rated by an ineligible official, Parita Shah.

65. Mr. Griffis informed Ms. Friedman that Plaintiff was a "malcontent employee," stating that Plaintiff never signed her performance appraisals, that was the way she was, and that she always had something to complain about.

66. Mr. Griffis' comments were intended to portray Plaintiff to Ms. Friedman in a negative light in order to undermine her new working relationship with Ms. Friedman, thereby ensuring that Plaintiff would have continued employment difficulties even after Mr. Griffis was no longer in her chain of command, and to damage Plaintiff's professional reputation.

67. Mr. Griffis' continuing actions were materially adverse in that they undermined Plaintiff, disregarded her work accomplishments, negatively affected her chances of improving her work performance, and significantly decreased her chances of receiving a higher rating for her FY2011 evaluation and of obtaining a promotion to the GS-14 grade level of the Public Affairs Specialist position.

68. In addition, Mr. Griffis' actions were humiliating and emotionally distressing to Plaintiff, causing her loss of self-esteem, and negatively affecting her work environment.

## COUNT 1

## RETALIATION

69. Plaintiff repeats and reasserts the allegations contained in paragraphs1 to 68 above with the same effect as if more fully set forth herein and further alleges:

70. By and through the challenged conduct, which occurred in close proximity to the time that Plaintiff engaged in protected activities, Defendant violated Title VII of the Civil Rights Act of 1964, as amended, because: Plaintiff engaged in prior protected activities by filing age discrimination and retaliation claims; Agency officials knew of her protected activities; Agency officials then took adverse employment actions against her; and there was a causal connection between Plaintiff's prior EEO activity and the adverse employment actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the court award her:

(a) retroactive upgrade of her FY2011 overall performance to a level "4" or "Commendable" rating, with retroactive promotion to the GS-14 grade level of the Public Affairs Specialist position;

(b) the sum of $100,00.00 in compensatory damages suffered because of the discrimination and retaliation;

(c) costs and reasonable attorney fees incurred in pursuit of this civil action; and

(d) such other relief as the court deems just and proper.

*[signature]*
Rhongelyn More
Plaintiff

By: *[signature]*
Monalie E. Bledsoe
Counsel for Plaintiff
D.C. Bar No. 928374
1629 K Street, N.W., Suite 300
Washington, D.C. 20036
(202) 508-1061
(301) 949-2053
Fax (240) 491-9881

### JURY TRIAL

Plaintiff demands a trial by jury of all issues herein.

*[signature]*
Monalie E. Bledsoe
Counsel for Plaintiff

## **VERIFICATION**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on July __31__, 2015.         *Rhongelyn Moore* (signature)
                                        Rhongelyn Moore