UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RHONGELYN MOORE, | : |
|  | : |
| Plaintiff, | : |
|  | : |
| v. | : |
|  | : |
| PENNY S. PRITZKER, | :   Civil Action No. 15-1248 (GK) |
| Secretary, United States | : |
| Department of Commerce | : |
|  | : |
|  | : |
| Defendant. | : |
|  | : |

### MEMORANDUM OPINION

Plaintiff Rhongelyn Moore, an African American woman, ("Plaintiff" or "Moore") brings this action against Penny S. Pritzker in her official capacity as Secretary of the United States Department of Commerce ("Defendant," "Employer" or "Government"). Plaintiff alleges retaliation in response to age and race discrimination and retaliation complaints she filed against Defendant with the Equal Employment Opportunity Commission ("EEOC"), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.

This matter is presently before the Court on Defendant's Motion to Dismiss or for Summary Judgment filed on November 3, 2015 ("Def.'s Mot.") [Dkt. No. 10]. On December 1, 2015, Plaintiff

filed an Opposition ("Pl.'s Opp.") [Dkt. No. 13]. Defendant did not file a Reply.

Upon consideration of the Motion, Opposition, the entire record herein, and for the reasons stated below, Defendant's Motion to Dismiss is **granted in part and denied in part**, and Defendant's Motion for Summary Judgment is **granted in part and denied in part**.

## I.   BACKGROUND

### A. Factual Background

Rhongelyn Moore ("Plaintiff," "Moore"), a black woman, has been employed by the United States Department of Commerce ("DOC," "Defendant") since 1990. Complaint ¶ 9 ("Compl.") [Dkt. No. 1]. In December 2001, Plaintiff was promoted to a GS-13 Public Affairs Specialist ("PAS") position in the Office of Public Affairs ("OPA") of the DOC. Id. ¶ 10. The OPA, which is located in the Office of the Secretary, acts as the primary point of contact for public affairs and serves as the liaison to the White House and the Executive Branch for all public affairs. Def.'s Mot. at 2 (citing United States Department of Commerce, Office of Public Affairs, https://www.commercegov/os/office-public-affairs).

As a GS-13 PAS, Moore worked on press releases, provided the Minority Business Development Agency ("MBDA") with support, drafted advisories on events, and corresponded with reporters. See Def.'s Mot. at 4, 6. Moore was supervised by Deputy Director of

-2-

OPA, Shannon Gilson. Compl. ¶ 11. Gilson was Moore's first-level supervisor until she left the OPA in August 2011. Id. Gilson was also Moore's documented rating official, which meant that she was responsible for both Moore's interim and final work performance evaluations for each fiscal year. See Pl.'s Opp. at 16, 19; Def.'s Mot. at 5. Moore's second level supervisor was Kevin Griffis, who was the Director of OPA until January 2012. Id. ¶ 12. As the second level supervisor, Griffis participated in the final performance evaluations and, when appropriate, approved the final ratings completed by the documented rating official. Pl.'s Opp. at 20; see also Griffis Decl. (Def.'s Ex. 5) ¶¶ 4-6 [Dkt. No. 10-5].

In August 2011, when Gilson left her position at the OPA, Parita Shah effectively became Moore's first-level supervisor and documented rating official. Griffis Decl. ¶ 41; Def.'s Mot. at 2; Pl.'s Opp. at 3. Prior to the promotion, Shah and Moore were co-workers and periodically worked together on assignments. Pl.'s Opp. at 18.   Following Shah's promotion, she left the office to work on a different assignment from August to September 2011 and returned in October 2011, after the end of FY 2011. Compl. ¶ 42. In January 2012, Jennifer Friedman replaced Griffis and became Plaintiff's new second-level supervisor when Griffis left the OPA. Compl. ¶¶ 12-13.

As a GS-13 PAS, Moore was given a Performance Appraisal for each fiscal year. See id. ¶ 14. The employees were evaluated on three critical elements known as Customer Service, Media Outreach and Support, and Special Projects. Id. ¶ 48. Each element was rated from a Level 1, which means unacceptable performance, to a Level 5, which signifies the highest level of performance. Def.'s Ex. 2 [Dkt. No. 10-2]. Each employee was also given an overall final rating based on the same rating scale. Id. Prior to an employee's final Performance Appraisal, he or she was given an interim rating. See Compl. ¶ 51. Included in the interim rating were notes on specific areas for improvement in the three critical elements. Id.

Prior to the final evaluation, employees were given the opportunity to submit to their supervisors a list of accomplishments that he or she achieved during that fiscal year. See id. ¶ 30; Def.'s Mot. at 3. The documented rating official also looked to reviews about employees from other departments with which the employee worked closely. In this case, Gilson corresponded with MBDA about the quality of Moore's work and overall performance for the fiscal year. Gilson Decl. (Def.'s Ex. 4) at 4 [Dkt. No. 10-4].

The relevant evaluation period in this case is FY 2011, which spanned October 1, 2010 to September 30, 2011. Id. With Gilson's departure set for the end of August 2011, Gilson called Moore to

-4-

review her performance on August 26, 2011. Def.'s Statement of Facts ¶ 9 [Dkt. No. 10-15]. At the evaluation meeting,[1] Moore and Gilson reviewed Moore's performance rating for the FY 2011. Compl. ¶ 49. Moore gave Gilson a list of FY 2011 accomplishments up to the date of the meeting. See id. ¶ 40.

Gilson gave Moore the following ratings: 4 in Customer Service; 3/4 in Media Outreach and Support; 3/4 in Special Projects. Compl. ¶ 50. Moore alleges that there was an understanding between her and Gilson that the ratings were not final. See Compl. ¶ 49; Def.'s Statement of Facts ¶ 21. Moore alleges that Gilson stated that "if [Moore] assisted MBDA with its MED Week event, she did not see why her overall evaluation rating would not be a level 4 or 5," and did not mention any other negative comments during this phone call. Pl.'s Opp. at 25, 30.

Moore alleges that she never received a hard copy of Gilson's interim performance rating, which she would have reviewed in order to respond and/or improve her performance. Pl.'s Opp. at 11; see also Decl. of Gilson at 3. Griffis received an email from Gilson on August 24, 2011 containing Moore's interim rating and the interim review comments. Pl.'s Opp. at 27. However, Griffis did

---

[1] It is unclear whether the phone call in late August 2011 was an interim or an end-of-year performance appraisal meeting. See Aff. of Spence (Def.'s Ex. 10) at 3 [Dkt. No. 10-10].

not discuss the rating and review comments with Moore or provide her with a copy of the rating. Compl. ¶¶ 28-29, 52. Other PAS employees received a copy of their ratings from Griffis. Pl.'s Interrog. at 8 [Dkt. No. 12].

Unlike other employees who received an email on December 5, 2011 from Griffis to submit a list of their accomplishments in preparation for FY 2011 performance evaluations, Moore did not receive such an email.[2] Compl. ¶¶ 30-31. Moore later learned about the email, but when she brought it to Griffis' attention, Griffis did not afford her the opportunity to submit a final list of accomplishments. Compl. ¶¶ 32, 39. Therefore, Moore was unable to submit a final list of accomplishments at the end of the rating cycle. Pl.'s Opp. at 16.

Due to the significant number of staff turnovers at OPA during FY 2011, the FY 2011 final evaluations were unusually delayed and were not given to employees until well after FY 2011 had ended. Def.'s Mot. at 5, 29. Moore received her FY 2011 final evaluation from Shah in February 2012. Compl. ¶ 47. At this point, Shah was Moore's rating official and Griffis was her approving official. Id. Moore received the following FY 2011 final ratings: 3 in Customer Service; 3 in Media Outreach and Support; and 4 in Special

---

[2] The Government states that this was a "mistake." Def.'s Mot. at 3.

Projects. Pl.'s Opp. at 30. Moore received an overall FY 2011 rating of a 3. Id. ¶¶ 53, 54.

Shah relied, at least in part, on Gilson's interim evaluation, which included the list of accomplishments that Moore gave to Gilson in August. Pl.'s Opp. at 12; see also Def.'s Mot. at 4-6. Shah stated that OPA wanted "Plaintiff [to] improve her relationship with MBDA." Def.'s Statement of Facts ¶ 17. Shah stated that Moore did not provide MBDA with additional support, which Moore denies. Id: ¶ 19; Pl.'s Opp. at 20. Griffis approved Shah's FY 2011 final evaluation of Moore. Pl.'s Opp. at 20; Def.'s Mot. at 23.

As a result of Moore's FY 2011 final rating and DOC's limited resources in FY 2011, she received a $150 bonus from Griffis. Compl. ¶ 57; Def.'s Mot. at 5. Pursuant to guidance from DOC's Office of the Secretary and the Office of Personnel Management on June 10, 2011, Griffis was required to limit all of the performance awards given to the staff so that the cumulative amount of awards did not exceed one percent of the total amount of salaries in OPA. Def.'s Statement of Facts ¶ 22; see also Griffis Decl. ¶ 8. This limit on performance awards decreased the agency's ability to give them. Id. Moore alleges that Griffis authorized her bonus prior to the end of FY 2011 and well before he requested staff accomplishments in December 2011. Compl. ¶ 58. Moore claims that

her bonus did not properly reflect her final performance review. Id.

On February 6, 2012, following the award of FY 2011 bonuses, Moore had a meeting with Friedman and Griffis to discuss her FY 2011 final evaluation. Def.'s Statement of Facts ¶ 25. At that meeting, Griffis told Friedman that Moore was a "malcontent" employee who never signed her performance evaluations and that she "always had something to complain about." Compl. ¶ 65. For example, Defendant stated that in May 2011, Moore wrote Gilson to say that she believed the kind of work she was doing was "extremely low level" and that she needed "something more substantive." Def.'s Mot. at 3.

**B. Procedural Background**

On February 28, 2011, Moore filed her administrative Equal Employment Opportunity ("EEO") claim alleging age discrimination against Griffis. Compl. ¶ 19. The Equal Employment Opportunity Commission ("EEOC") granted the Government's motion for summary judgment on August 13, 2012. Id. On June 16, 2011, Moore filed a complaint against Griffis and Gilson alleging racial discrimination and retaliation for her prior EEO activity. Id. ¶ 21; Def.'s Mot. at 6. The complaint was based in part on Moore's request for a promotion to the GS-14 of PAS in May 2011 that was ultimately denied. Compl. ¶ 20. The administrative judge granted

-8-

the Government's motion for summary judgment on this complaint on February 27, 2014. Def.'s Mot. at 7.  Plaintiff did not appeal. Id.

On March 6, 2012, Moore filed her third formal complaint of retaliation with the EEOC which is the relevant administrative action in the instant case. Def.'s Mot. at 7; Pl.'s Opp. at 4. Defendant accepted four counts of retaliation for investigation, which included allegations that (1) Griffis refused to accept Moore's final list of FY 2011 performance accomplishments; (2) Griffis refused to complete Moore's FY 2011 performance evaluation; (3) Griffis recommended Moore for a $150 performance bonus, the lowest amount ever awarded to a PAS; and (4) in a meeting on February 6, 2012, Griffis attempted to portray Moore as a "malcontent employee" in front of Friedman, the new Public Affairs Director. Pl.'s Opp. at 4-5. On April 30, 2015, following discovery, the EEOC granted the Government's motion for summary judgment on all counts. Def.'s Mot. at 8; see Pl.'s Ex. B [Dkt. No. 1-2]. Defendant's Office of Civil Rights implemented the judgment on May 6, 2015. Def.'s Mot. at 8.

On August 3, 2015, pursuant to 42 U.S.C. § 2000e-16(c), Moore filed her Complaint alleging one count of retaliation under Title VII under the Civil Rights Act of 1964 against Defendant. Compl. ¶ 69-70. Moore states that the following actions constitute

retaliatory conduct following her EEO activity: (1) Griffis'
refusal to provide Moore with a copy of her FY 2011 interim rating;
(2) Griffis' refusal to accept Moore's FY 2011 performance
accomplishments; (3) Shah's ineligibility to rate Moore's FY 2011
performance; (4) Griffis' delay in timely completing Moore's FY
2011 performance evaluation; (5) Griffis' FY 2011 performance
evaluation of Moore; (6) Griffis' recommendation of a $150
performance bonus for Moore; and (7) Griffis' attempt to undermine
Moore after Griffis left his position. See generally Compl.

Moore claims compensatory damages, upgraded performance
appraisals, and a retroactive promotion to GS-14 grade level of
PAS position as relief for the alleged retaliation. Compl. at 11-
12. She also claims damages for disparate treatment, humiliation,
stress, anxiety, and damage to personal and professional self-
esteem. Pl.'s Interrog. at 11.

On November 3, 2015, the Government filed its Motion to
Dismiss or for Summary Judgment. On December 1, 2015, Plaintiff
responded with her Opposition, and the Government failed to file
a Reply.

## II.  STANDARD OF REVIEW

### A. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a
plaintiff need only plead "enough facts to state a claim to relief

that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. Under the Twombly standard, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiffs' success... [,] must assume all the allegations in the complaint are true (even if doubtful in fact)... [, and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotation marks and citations omitted). A complaint will not suffice, however, if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

"[M]otions to dismiss for failure to exhaust administrative remedies are . . . appropriately analyzed under Rule 12(b)(6)." Winston v. Clough, 712 F. Supp. 2d 1, 6 (D.D.C. 2010). "Before filing suit, a federal employee who believes that her agency has discriminated against her in violation of Title VII must first seek administrative adjudication of her claim." Payne v. Salazar, 619 F.3d 56, 58 (D.C. Cir. 2010) (citation omitted); see 42 U.S.C.

§ 2000e-16(c). After receiving notice of the agency's final action, a plaintiff must file his or her civil action in the appropriate District Court within 90 days. 42 U.S.C. § 2000e-16(c); see also Colbert v. Potter, 471 F.3d 158, 160 (D.C. Cir. 2006).

These exhaustion requirements are not jurisdictional, but rather are "similar to a statute of limitations." Colbert, 471 F.3d at 167. Therefore, they are properly raised in a Rule 12(b)(6) motion to dismiss. See Rosier v. Holder, 833 F.Supp.2d 1, 5 (D.D.C. 2011) (citing Artis v. Bernanke, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011)); see also Gordon v. Nat'l Youth Work Alliance, 675 F.2d 356 (D.C. Cir. 1982) (noting that proper method for raising a defense of limitation is a motion under Rule 12(b)(6)).

### B. Motion for Summary Judgment

A motion for summary judgment is granted only if, looking at the totality of admissible evidence, there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006). To establish whether a fact is or is not genuinely disputed, a party must cite to specific parts of the record, including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence, to support its position. Mason v. Geithner, 811 F. Supp. 2d 128, 174 (D.D.C. 2011). "Conclusory assertions offered without any factual

-12-

basis in the record cannot create a genuine dispute sufficient to survive summary judgement." Id. (citing Ass'n of Flight Attendants-CWA v. U.S. Dept. of Transp., 564 F.3d 462, 465 (D.C. Cir. 2009)) Pursuant to Federal Rule of Civil Procedure 56(a), "[i]f the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its significance, summary judgment is improper." Beard v. Preston, 576 F. Supp. 2d 93, 101 (D.D.C. 2008) (internal quotations omitted).

## III. ANALYSIS

### A. Motion to Dismiss

#### 1. Exhaustion of Administrative Remedies (Allegations 1 and 5)[3]

"Title VII requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge." 42 U.S.C. § 2000e-16; e.g., Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995). This exhaustion requirement allows the EEOC to investigate, and gives the employer notice of the claim, narrowing the issue for prompt adjudication

---

[3] Plaintiff has alleged only one Count of retaliation in her Complaint, but she has proffered seven factual allegations in support of that Count. The Court will address each of these seven factual allegations, which correspond to both the seven section headings in Plaintiff's Complaint and the seven "Claims" outlined in Defendant's Motion.

and decision. Ndondji v. InterPark Inc., 768 F. Supp. 2d 263, 276 (D.D.C. 2011).

For a claim of retaliation, a plaintiff is permitted to combine acts committed over a period of years, including acts by different supervisors, into a single actionable claim. Bergbauer v. Mabus, 934 F. Supp. 2d 55, 82 (D.D.C. 2013). A lawsuit following an EEOC charge must be limited to the claims that were exhausted through administrative remedies and those that are "like or reasonably related to the allegations of the charge and growing out of such allegations." Ndondji, 768 F. Supp. 2d at 276; see also Drewery v. Clinton, 763 F. Supp. 2d 54, 61 (D.D.C. 2011). "At minimum, the Title VII claims must arise from the administrative investigation that can reasonably be expected to follow the charge." Park, 71 F.3d at 907 (internal quotations omitted).

Defendant alleges that Moore's Allegations 1 and 5, which it refers to as "claims" 1 and 5 were not exhausted through the available administrative remedies and therefore should be dismissed by this Court. Def.'s Mot. at 13-15. The Government argues that these "claims" were not specifically alleged in Moore's March 6, 2012 complaint to the EEOC. Id. at 14. Additionally, the Government argues that the EEOC did not accept these two "claims" for investigation at any point. Id.

However, a reasonable investigation of the original four claims as listed in Moore's March 6, 2012 charge to the EEOC would have given the Government notice of these two "additional claims." Allegation 1 in Moore's Complaint alleges retaliatory conduct based on Griffis' refusal to provide Moore with a copy of her FY 2011 interim rating. Griffis' refusal is reasonably related to the second Claim that the EEOC accepted for investigation, namely, that "Griffis refused to complete her FY 2011 performance evaluation rating in a timely manner, and then assigned Parita Shah, an 'ineligible rating official' to rate her." Pl.'s Opp. at 5, 11. In fact, in its April 30, 2015 Order, the EEOC found that the FY 2011 interim review was missing. Pl.'s Ex. B at 5. Therefore, questions regarding Moore's interim rating were addressed and investigated by the EEOC.

In addition, the Government claims that Shah relied on Gilson's interim comments for Moore's final FY 2011 ratings. Therefore, an allegation that Griffis did not provide Moore an opportunity to review her interim ratings reasonably relates to the issues addressed and exhausted by the EEOC. Taken together, the EEOC's comments on the FY 2011 interim ratings are sufficient to exhaust the claim because they put the Government on notice of Moore's allegations regarding her interim rating.

-15-

Similarly, Allegation 5, relating to Griffis' final FY 2011 performance evaluation of Moore, is reasonably related to the original four claims brought before to the EEOC. In its April 30, 2015 Order, the EEOC addressed Moore's allegations that she was not afforded an opportunity to submit a final list of performance accomplishments before receiving her final FY 2011 performance evaluation. This point directly relates to Moore's original four claims before the EEOC because an employee's list of accomplishments affects his or her final evaluation. Pl.'s Opp. at 12. Moreover, because the performance evaluation directly impacts an employee's performance bonus, this allegation is reasonably related to Moore's award of a $150 performance bonus, which was both raised in the EEO charge by Moore and investigated by the EEOC. Compl. ¶ 58; Def.'s Mot. at 28.

A plaintiff's burden to state specific claims is not so strict that Moore is barred from bringing these two claims because they were not specifically enumerated as claims in her original retaliation complaint before the EEOC. All of Moore's claims identified in her Complaint relate to the FY 2011 performance evaluation process, which the EEOC had the opportunity to investigate. Because the acts outlined in all seven Allegations can be tied to one of Moore's original four claims before the EEOC,

this court will address each of the seven Allegations outlined in Moore's Complaint and Defendant's Motion.

### 2. Failure to Establish Prima Facie Case of Retaliation (All Allegations)

The Government claims that Moore has failed to establish a prima facie case of retaliation under Title VII. In order to state a claim for retaliation under Title VII, Moore must demonstrate that (1) she engaged in protected behavior; (2) the Government took a materially adverse action against her; and (3) the Government took the action because the employee engaged in the protected behavior. See McGrath v. Clinton, 666 F.3d 1377, 1380 (D.C. Cir. 2012). Both parties agree that Moore engaged in a protected activity when she filed her EEOC Complaints. The Government disputes that Moore satisfied the second two elements of a prima facie case of retaliation.

### a. Failure to Allege a Materially Adverse Action (Allegations 1, 2, 3, 4, and 7)

### i. Allegations 1, 3 and 4

Moore asserts that Griffis' refusal to complete her FY 2011 performance evaluation rating in a timely manner and assignment of Shah to rate her constituted a materially adverse action because they affected her promotional potential and materially lowered her performance award. See Pl.'s Opp. at 20 (citing Baloch v.

Kempthorne, 550 F. 3d 1191, 1199 (D.C. Cir. 2008) and Weber v. Battista, 494 F.3d 179, 185-86 (D.C. Cir. 2007).

The Government argues, without citing any controlling case law, that Moore's allegations in these three claims do not rise to the level of materiality, and instead are merely "minor annoyances." Taken in the light most favorable to Moore, the Government's argument is conclusory at best. The Government has not met its burden of showing that Moore's grievances do not rise to the level of a materially adverse action with regard to these claims.

### ii.    Allegation 2

Moore argues that Griffis' refusal to accept her performance accomplishments after leaving her off the December 5, 2011 email constituted a materially adverse action. She argues that her performance review was based on her earlier, unfinished list of accomplishments and that her poor performance review kept her from a promotion and a higher bonus. See Pl.'s Opp. at 16.

The Government argues that these actions do not meet the "materially adverse" bar because "a single critical email is not an adverse action." Def.'s Mot. at 17 (citing Kline v. Berry, 404 Fed. Appx. 505, 506 (D.C. Cir. 2010). The Government mischaracterizes Moore's allegations. Moore alleges far more than one critical email; she argues that her supervisor denied her the

opportunity to advocate for her performance review which in turn denied her promotion and bonus opportunities. Moore has therefore shown a materially adverse action for Allegation 2.

### iii. Allegation 7

Finally, Moore argues that Griffis' alleged attempt to undermine her relationship with her new supervisor was a materially adverse action that "could have undermined Plaintiff's working relationship with Ms. Friedman and her opportunity for a fresh start and for a promotion." Pl.'s Opp. at 32 (emphasis added). Moore also claims that "after Ms. Gilson and Griffis left the Agency, Plaintiff's performance rating again climbed to a level '4' rating." Pl.'s Opp. at 32. Thus, by Moore's own admission, the hypothetical adverse action that could have resulted from Griffis' statements failed to materialize. Moore has therefore failed to show a materially adverse action for Allegation 7, and it shall be dismissed.

> **b. Failure to Allege that Retaliation Was the But-For Cause of Each Alleged Adverse Action (All Allegations)**

Moore argues that she has sufficiently plead that retaliation was the but-for cause of each alleged adverse action, because each such action occurred within close temporal proximity to her protected activity.

-19-

The Government argues that Moore has failed to establish that the employer's actions were the but-for cause of each alleged adverse action because the adverse actions were not sufficiently close in time to Moore's filing the EEOC complaints.

In support of its argument, the Government cites Moore's assertion that the alleged retaliatory actions occurred within "1-2 years" of her protected activity, (Def.'s Mot. at 19 (citing Def.'s Ex. 9 [Dkt. No. 10-9])), and argues that a 1-2 year gap between the protected activity and adverse actions is not sufficiently close in time to establish but-for causation. See Def.'s Mot. at 19 n. 2. However, Moore clarifies that her age discrimination complaint was filed on or about February 28, 2011, and a final order on the administrative judge's decision was issued by Defendant on or about August 13, 2012. Pl.'s Opp. at 33. Moore further specifies that her retaliation complaint was filed with the EEOC on June 16, 2011 with a final decision issued on or about March 6, 2014. Id. Thus, all of the alleged adverse actions occurred during the time period between Moore's filing of her complaints and the administrative judges' final decisions. Viewed in the light most favorable to Moore, she has established the element of but-for causation.

In conclusion, Defendant's Motion to Dismiss will be denied on all counts except for Allegation 7, which will be dismissed.

-20-

### B. Motion for Summary Judgment

#### 1. Legal Framework

Under the McDonnell Douglas framework, 411 U.S. 792 (1973),
in order to establish a prima facie case of retaliation, the
plaintiff must demonstrate that he or she engaged in a protected
activity and the employer's retaliation, which was materially
adverse, was based on that activity. See e.g., Johnson v. Perez,
823 F.3d 701, 706 (D.C. Cir. 2016).

A plaintiff need only establish facts adequate to permit an
inference of retaliatory motive by a preponderance of the evidence.
Forman v. Small, 271 F.3d 285, 299 (D.C. Cir. 2001) (noting that
the initial burden is not great). Once the plaintiff has
established a prima facie case of retaliation, the defendant can
rebut the plaintiff's case by producing evidence that the employer
took the adverse employment actions for a legitimate, non-
discriminatory reason. Id. at 102 (citing Aka v. Washington Hosp.
Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998).

However, if the defendant has offered a legitimate, non-
discriminatory reason for its actions, the court need not and
should not decide whether the plaintiff actually made out a prima
facie case. Brady v. Office of the Sergeant at Arms, 520 F.3d 490,
494 (D.C. Cir. 2008). Thus, the "district court must resolve one

-21-

central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason." Id.

Our Court of Appeals has declined to serve as a "super personnel department that reexamines an entity's business decisions." Holcomb v. Powell, 433 F.3d 889, 897 (D.C. Cir. 2006). Once a legitimate, non-discriminatory reason is established, the Plaintiff must present sufficient evidence for a reasonable jury to find that the employer intentionally retaliated against the employee to demonstrate pretext. Dave, 606 F. Supp. 2d at 50 (internal quotations omitted). "The plaintiff cannot rely on her view that the employer's actions were imprudent or unfair; an employer may make an employment decision for a good reason, a bad reason, or no reason at all so long as the decision is not made in reprisal for the plaintiff's protected activity." Mason v. Geithner, 811 F. Supp. 2d 128, 187 (D.D.C. 2011).

Defendant argues that she has articulated a non-discriminatory reason for each of its actions. This Court will therefore only examine whether Plaintiff has provided sufficient evidence to establish that Defendant's proffered reasons are merely pretext.

### 2. Allegations 1 and 2

The Government asserts that denying Moore a hard copy of her interim rating (Allegation 1) and Griffis' omission of Moore from the December 5, 2011 email and subsequent refusal to accept her FY2011 performance requirements (Allegation 2) were "'minor procedural irregularit[ies]' in personnel practices [that] do[] not give rise to an inference of discrimination." Brown v. Broad Bd. Of Governors, 662 F. Supp. 2d 41, 50 (D.D.C. 2009) (citing Kelly v. Hairston, 605 F. Supp. 2d 175, 179 n. 3 (D.D.C. 2009); see also Diggs v. Potter, 700 F. Supp. 2d 20, 44 (holding that an administrative error establishes a legitimate non-discriminatory reason for an employer's action).

With regard to Allegation 1, Moore counters that because Griffis was in possession of the emails which formed the basis for Plaintiff's final interim performance appraisal, his failure to provide Plaintiff with a copy was deliberate and discriminatory. Pl.'s Opp. at 34-35 (citing Defendant's Ex. 11, Emails between Griffis and Gilson [Dkt. No. 10-11]).

The Government notes that Gilson claimed that she misplaced the written interim performance review. Defendant's Ex. 10, p. 21. However, the written interim review was based on the August 25, 2011 email exchanges between Gilson and Griffis that contained the actual comments and rating. Id.; Defendant's Ex. 11. Griffis had

the August 25 emails in his possession at all times after Plaintiff requested a copy of the interim rating and has provided no legitimate reason why he refused to provide it to her.

With regard to Allegation 2, Moore argues that Griffis' failure to include her on the December 5, 2011 email could not have been an oversight or minor procedural irregularity because "Mr. Griffis either had to remove Plaintiff's name from the e-mail list or create his own list of names." Pl.'s Opp. at 15; see also Defendant's Ex. 9 at 14 [Dkt. No. 10-9]. Defendant has not provided any legitimate, non-discriminatory reason why it did not permit Moore to submit her accomplishments after both parties realized she had been left off the December 5, 2011 email. Because the list of accomplishments was used to determine Moore's performance ratings, Griffis' refusal to correct his "oversight" amounts to more than a minor procedural irregularity.

Summary Judgment shall therefore be denied for Allegations 1 and 2.

### 3. Allegations 3 and 4

The Government argues that Allegations 3, "Parita Shah's ineligibility to rate Plaintiff's FY2011 performance," Def.'s Mot. at 7, and Allegation 4, "Mr. Griffis' delay in timely completing Plaintiff's FY2011 performance evaluation, id., "concern nothing more than Defendant's business decisions." Def.'s Mot. at 22.

-24-

Moreover, the Government has presented evidence to show that Moore was not uniquely situated as to either of these complaints.

As to Allegation 3, the Government explained that OPA experienced a high number of staff turnovers in FY 2011. The departing staff members included Gilson, Moore's first-level supervisor. As a consequence of these departures, Griffis, in his capacity as the Director of OPA, made the business decision to appoint Shah to Gilson's former position. Def.'s Mot. at 22. Moore was not the only one among Gilson's supervisees to be transferred to and rated by Shah for FY 2011. Def.'s Mot. at 22 (citing Def.'s Ex. 5 at 2 [Dkt. No. 10-2]). In fact, all of Gilson's supervisees were transferred to Shah, who gave them their FY 2011 final performance evaluations. See Def.'s Ex. 5 at 2.

Similarly, as to Allegation 4, the Government stated that the significant number of staff turnovers contributed to the delay in Griffis' ability to complete the FY final evaluations. See Def.'s Mot. at 22 (Citing Def.'s Ex. 7 at 1 [Dkt. No. 10-7] and Def.'s Ex. 5 at 2). The Government decided to allow "new employees to get acclimated to OPA" before rating them. It was that decision that caused the delay in issuing performance evaluations for FY 2011. Id. 22-23. Significantly, Moore was not the only employee who received her FY 2011 final evaluation late. Id. at 26. The Government also submitted evidence that another employee received

-25-

a rating after Moore did. Compare Compl. ¶ 47 (alleging that Moore received her rating in February 2012), with Def.'s Ex. 2 at 7 [Dkt. No. 10-2] (showing that Employee C received her FY2011 rating on March 9, 2012).

Moore argues that "there is no indication as to when it was actually presented to the employee." Pl.'s Opp. at 35. However, Moore points to no concrete evidence beyond her speculation that would suggest that the other employee's rating did not occur on the date cited by the Government. Although the Court must consider all allegations in the light most favorable to Plaintiff, the non-moving party, mere speculation is insufficient to establish pretext. See Alexis v. District of Columbia, 44 F. Supp. 2d 331, 337 (D.D.C. 1999) (holding that a non-moving party must present "specific facts showing that there is a genuine issue for trial," and "may not rely on mere allegations or denials to prevail" in order for the Court to deny a motion for summary judgment).

Plaintiff has therefore failed to carry her burden in showing pretext with sufficient evidence for a reasonable jury to find retaliatory motive regarding Allegations 3 and 4.

### 4. Allegations 5 and 6

The Government asserts that Griffis' FY2011 Performance Evaluation of Moore (Allegation 5) and Griffis' recommendation of a $150 performance bonus for Moore (Allegation 6) were based on

-26-

the employer's dissatisfaction with Moore's work performance. There is no question that dissatisfaction with an employee's performance may establish a legitimate, non-discriminatory reason for an employee's performance rating and low bonus. See Johnson v. Bolden, 492 F. App'x 118 (D.C. Cir. 2012) (holding that an employer's dissatisfaction with employee's work was a legitimate non-discriminatory reason for a poor performance rating and a low bonus).

Moreover, the Government articulated a number of legitimate reasons for Moore's low performance rating. For example, the Government stated in Moore's performance rating that, "[w]e would like to see [Plaintiff] improve her relationship with MBDA," Def.'s Ex. 8 at 3, noting that "[clients at MBDA] say she has been collegial but say they would like her to improve press release turnaround time which can take up to four days." Id. The Government also noted that the MBDA was not "satisfied with [Plaintiff] as its liaison." Id. The Government listed additional complaints about Moore's work performance as explanation for her performance rating. See Def.'s Mot. at 24.

Defendant also asserts that Moore's bonus of $150 was lower than it might otherwise have been to reflect the Government's above-mentioned concerns as well as the fact that, "the Office of Public Affairs' budget was reduced and consequently the Office of

Public Affairs had significantly less money for bonuses." Def.'s Ex. 5 at 2.

Moore asserts that the Government's reasons are merely pretext, relying on her assertions in Allegations 1, 2, and 3; namely, that Shah was not qualified to review her performance and that she was not given sufficient opportunity to review and respond to the interim rating because she did not receive a hard copy. Pl.'s Opp. at 36-37. Moore argues that with regard to her work on press releases for MBDA, "any delay was not caused by [Plaintiff] but resulted from the review process itself after a press release from MNDA was forwarded by [Plaintiff]." Def.'s Ex. 9 at 7. Moore further asserts that "Defendant's stated reasons do not explain why the bonus was six times less than other Public Affairs Specialists who were only one grade level above her and received at least $1000." Id. at 37.

The Court has already found that the fact of Shah's review of Moore was not discriminatory. Moore's disagreement with the employer's assessment of her work is not, without more, sufficient to establish pretext. See Robertson v. Dodaro, 767 F. Supp. 2d 185, 192 (D.D.C. 2011) ("an employee's subjective assessment of her own performance is insufficient to establish such pretext evidence").

### 5. Allegations 7

Even if Moore had established a materially adverse action for Claim 7, she has failed to present evidence that the Government's legitimate non-discriminatory reason for this action was pretext.

The Government argues that Moore's allegation that Griffis attempted to undermine her after he left his position (Allegation 7) lacks merit because Griffis' statements about Moore were factual. For example, Moore alleges that Griffis stated that Plaintiff never signed performance appraisals, and that Plaintiff always had something to complain about. Compl. ¶ 65.

However, Moore concedes that she had not signed a performance appraisal since 2009. Compl. Ex. B at 5-6. Furthermore, Moore simply responds that her complaints were justified and permitted. Pl.'s Opp. at 37-38. Moore points to no other evidence in support of her assertion that the Government's legitimate non-discriminatory reason was pretext. Thus, this Court will grant summary judgment for Defendant on Allegation 7.

In conclusion, Defendant's Motion for Summary Judgment will be granted on all accounts except for Allegations 1 and 2, which will survive the Motion.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **granted in part and denied in part**. Defendant's Motion to Dismiss is **granted** as to the allegation that it has labeled "Claim 7," but **denied** as to all other allegations.

Defendant's Motion for Summary Judgment is **granted in part and denied in part**. Defendant's Motion for Summary Judgment is **granted** as to the allegations that it has labeled "Claims" 3-7, but **denied** as to the allegations that it has labeled "Claims" 1-2.

An Order shall accompany this Memorandum Opinion.

September 1, 2016

Gladys Kessler
United States District Judge

**Copies to**: attorneys on record via ECF